Joseph La Costa # 108443
joelacostaesq@gmail.com
7860 Mission Center Court, Suite #103
San Diego, California 92108
(619) 922-5287

Attorney for Plaintiff, Albert Patrick Zappia

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT PATRICK ZAPIA, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., and DOES 1-100, inclusive, <br><br> Defendants. | Case No.: '18CV0026 CAB JLB <br><br> 1) BREACH OF CONTRACT; <br> 2) VIOLATION OF 12 CFR 1024.35 (REGULATION X) <br><br> DEMAND FOR JURY TRIAL |

Plaintiff ALBERT PATRICK ZAPIA, by his attorney, for causes of action against Defendant Wells Fargo Bank, N.A., and DOES 1-100 (hereinafter collectively referred to as "Defendants"), alleges the following on information and belief:

**I.**
**PARTIES**

1. Plaintiff ALBERT PATRICK ZAPIA is an individual and a resident of the State of California, County of San Diego. At all times relevant herein, Plaintiff owns and resides in the

subject real property, commonly known as 1560 Stevenson Court, San Marcos, California 92069, (the "Property").

2. Defendant Wells Fargo Bank, N.A. ("WFB") is National Banking Association with domicile outside of the State of California.

3. The true names and capacities of Defendants named herein as DOES 1 through 100 are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff will amend the Complaint to show the true names and capacities of such DOES when they have been ascertained.  Upon information and belief, Plaintiff alleges that each of DOES 1 through 100 was responsible in some manner for the occurrences, acts, and transactions herein alleged, and that Plaintiff's damages and violations of Plaintiff's rights were proximately caused by such Defendants.

4. Upon information and belief, Plaintiff alleges that at all times mentioned Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and, by engaging in the actions mentioned below, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of co-Defendants.

5. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or ostensible scope of their authority.

## II.
## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction through diversity, as well as because the questions raised pertain to violations of Federal law.

## III.
## DEMAND FOR JURY TRIAL

7. Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

## IV.
## STATEMENT OF FACTS

8. In 2002 Plaintiff borrowed $558,750.00 from World Savings Bank, FSB pursuant to a promissory note (See Exhibit "A") secured by a deed of trust (See Exhibit "B") relative to the subject property.  Wells Fargo Bank is the successor in interest to the original lender.

9. The Note provided that the interest rate charged would be adjustable by adding 3.200 percentage points to an "index" defined in the note as "the monthly weighted average cost of savings, borrowings and advances of members of the Federal Home Loan Bank of San Francisco."

10. In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (Regulation Z) (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

12. The residential mortgage loan (the "Loan") in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

13. Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as defined in 12 C.F.R. § 1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. § 617.700.

14. At Plaintiff's request, on March 21, 2014 WFB provided Plaintiff a statement that incorrectly set forth the amount due under the Note and Deed of Trust, and incorrectly itemized the payments received and applied using the incorrect interest rate and including improper fees and expenses. (See Exhibit "C.")

15. While the Plaintiff has now made all payments demanded by Defendants, over the years he did fall behind in his payments, and as a result WFB caused a "Notice of Default" to be recorded with the San Diego County Recorder, and a non-judicial sale of the property posted.

16. On or about May of 2016, WFB demanded $204,991.30 to cure the default of the Note. The amount demanded included marked up and unnecessary fees.

17. On May 24, 2016, Plaintiff paid the $204,991.30 demanded by WFB to cure the default of the Note and prevent the imminent foreclosure of his property.

18. To date, WFB has NOT removed the "Notice of Default" from the public record as required by California Civil Code Section 2924(c)(a)2.

19. Plaintiff has continued to make all payments demanded by WFB.

20. Defendant WFB has sent billings to Plaintiff incorrectly reflecting the loan is "fixed" at 7.00%.

21. Defendant WFB has demanded payments from Plaintiff based on the incorrect interest calculation.

22. Defendant WFB has failed to credit the payments made by Plaintiff as required under the Note.

23. Plaintiff, both individually and through counsel, has repeatedly brought the overpayment to the attention of WFB and their counsel, who at all times has failed and refused to correct the identified error in the calculation of interest and the amount owed leading to the present overpayment of $250,000.00.

24. As a result of the failure to comply with Civil Code Section 2924(c)(a)2 Plaintiff has been unable to obtain credit at the most favorable rates, and has been forced to pay higher interest rates and been forced to pay higher down payments on other real estate loans sought.

25. As a result of the miscalculation in the interest rate, and failure to correctly credit payments made, Plaintiff has OVERPAID Defendant WFB by over $250,000.00 more than actually owed on the Note, exclusive of improper fees and expenses charged (discussed in the next section), as set forth in the itemization attached hereto as Exhibit "D."

**Defendants' Marked-Up and Unnecessary Fees for Default-Related Services**

26. Plaintiff alleges upon information and belief that in Defendants' loan servicing operations, Defendants follow a strategy to generate fraudulently concealed default-related fee income.

Rather than simply obtaining default-related services directly from independent third-party venders, and charging borrowers for the actual cost of these services, Defendants assess borrowers' accounts for services that are unnecessary and they unlawfully add additional undisclosed profits on to the charges before they are assessed on borrowers' accounts.

27. Plaintiff alleges upon information and belief that Defendants' scheme works as follows: Defendants order default-related services from their subsidiaries and affiliated companies, who, in turn, obtain the services from third-party vendors. The third-party vendors charge Defendants for their services. Defendants, in turn, charge borrowers a fee that is significantly marked-up from the third-party vendors' actual fees for the services. As a result, even though the mortgage market has collapsed, and more and more borrowers are following into delinquency, Defendants continue to earn substantial profits by assessing undisclosed, marked-up fees for default-related services on borrowers' accounts.

28. The mortgage contract between a lender and a borrower consists of two (2) documents: The Promissory Note ("Note") and the Mortgage or Deed of Trust ("Security Instrument"). The mortgage contracts serviced by Defendants are substantially similar because they conform to the standard Fannie Mae/Freddie Mac form contract. These contracts contain form language regarding what occurs if borrowers default on their loans. The Security Instrument authorizes the loan services, in the event of default, to:

> pay for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.

29. The Security Instrument further provides that any such amounts disbursed by the servicer shall become additional debt of the borrower secured by the Security Instrument and shall bear interest at the Note rate from the date of disbursement. The Note provides that the note holder:

> will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

30. Thus, the mortgage contract allows the servicer to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrowers, but it *does not authorize* the servicer to mark-up the actual cost of those services to make a profit.

31. By charging marked-up fees, Defendants violate their agreements with borrowers because charges that exceed the actual cost of the services provided are neither reasonable nor appropriate to protect the Note holder's interest in the property and the rights under the Security Instrument.

32. Furthermore, the wrongful nature of the marked-up fees is demonstrated by the fact that Defendants do not disclose to borrowers that the fees assessed on their accounts are marked-up from the amount actually charged by the vendor.

33. Defendants conceal these marked-up fees for default-related services on borrowers' accounts, including Plaintiff's, by identifying the charges only as "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" on borrowers' statements.

34. Plaintiff alleges upon information and belief that under the "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" categories on borrowers' statements, Defendants also assess unnecessary and unreasonable fees for property inspections. Although such inspections purportedly are conducted to guard against property loss, Defendants' practices are designed to ensure that these fees are charged to as many accounts as possible, even if the inspections are inappropriate, unnecessary, or unreasonable.

35. Plaintiff alleges upon information and belief that even if the property inspections were properly performed and actually reviewed by someone at the bank, Defendants' continuous assessment of fees for these inspections on borrowers' accounts is still improper and unreasonable because of the frequency with which they are performed. If the first inspection report shows that the property is occupied and in good condition, it is unnecessary and inappropriate for Defendants to automatically continue to order monthly inspections. Nothing in the reports justifies continued monitoring.

36. The assessment of these marked-up fees can make it impossible for borrowers to become current on their loan. Charges for default-related services can add hundreds or thousands of

dollars to borrowers' loans over time, driving them further into default.

37. When borrowers like Plaintiff get behind on their mortgages and fees for these default-related services are added on to the past-due principal and interest payments, Defendants' practices make it increasingly difficult for borrowers to ever bring their loan current. Even if borrowers pay the delinquent principal and interest payments, the marked-up fees for default-related services ensure that borrowers stay in default. After paying delinquent principal and interest, although the next payment comes in on time, often through automatic payment deductions from borrowers' bank accounts, part of the payment is applied to the fees first, so there is not enough to cover the entire monthly payment. This makes the payment late, creating a cascade of more fees and arrears, which keeps borrowers in delinquency. By the time borrowers are aware, Defendants are threatening to foreclose unless a huge payment is made, and the weight of these unnecessary fees drops borrowers into a financial abyss.

38. As a result of Defendants' practices, borrowers, including Plaintiff, are forced deeper into default, and suffer damage to their credit scores. Defendants provide information about borrowers' payment history to credit reporting companies, including whether they have been late with a payment or missed any payments. By keeping borrowers in default with these practices, Defendants affect whether borrowers can get a loan in the future, and what the interest rate will be on such loans.

39. Additionally, as a result of Defendants' practices, borrowers, including Plaintiff, are wrongfully driven into foreclosure.

## VI.
## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

40. Plaintiff adopts and incorporates the paragraphs above as though fully set forth herein.

41. The parties have an existing contractual relationship that originated when Plaintiff signed the Note and Deed of Trust and agreed to allow the Deed of Trust to secure the payment of the Note while the repayment was made. Defendant's predecessor in interest paid the proceeds of the subject loan, and agreed to release the Deed of Trust when the note proceeds were repaid in

full.

42. Plaintiff performed all the obligations required of him under the contract by paying Defendant the full amount owed under the terms of the contract, and allowing his family home to be encumbered by the Deed of Trust during the repayment period.

43. Defendant breached the agreement by failing to properly calculate the interest rate charged, failing to correctly apply the payments made, failing to release the "Notice of Default" when the prior default was cured, failing to release the deed of trust when Plaintiff paid the note in full, and by failing to discontinue billing Plaintiff under threat of foreclosure after Defendant had been paid in full.

44. Plaintiff has been damaged in an amount to be shown at trial, but no less than the $250,000.00 itemized in Exhibit "D."

## VII.
## CAUSE OF ACTION
## VIOLATION OF 12 CFR 1024.35 (REGULATION X)

45. Plaintiff adopts and incorporates the paragraphs above as though fully set forth herein.

46. Plaintiff, individually and through counsel, has repeatedly notified Defendant WFB regarding the following errors in the serving of the subject note:
    a. Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.
    b. Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.
    c. Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).

47. Defendant's failure to properly service Plaintiff's payments relative to his secured Note have caused him damage in excess of $250,000.00 to be shown at trial.

**PRAYER**

**WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, as follows:**

1. For damages sustained by Plaintiff due to Defendants' wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;
2. For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;
3. For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;
4. For interest on the sum at the rate of 10% per annum;
5. For and award of reasonable attorney fees;
6. For such other and further relief as this Court deems just and proper.

Dated: December 27, 2017           **LAW OFFICES OF JOSEPH C. LA COSTA**

                                                                /s/ Joseph C. La Costa
                                             By:_____
                                                 Joseph C. La Costa., Esq.
                                                 Attorneys for Plaintiff